UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNAE NEAL,

             Plaintiff,                               Case No: 11-13306

v.                                        Honorable Victoria A. Roberts

THE UNITED STATES OF AMERICA,

             Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 42)

### I.    INTRODUCTION

This is an action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1246(b), 2671-80 ("FTCA"), for alleged negligence related to an automobile collision between Plaintiff's car and a government vehicle.

Before the Court is Defendant's Federal Rule of Civil Procedure 56 motion for summary judgment.

Defendant's motion is **GRANTED**. There is no genuine issue of material fact regarding the "emergency vehicle exception" to Mich. Comp. Laws Ann. § 257.603 (West); Mr. Temple operated an emergency vehicle in an emergency situation and exercised due care.

### II.    BACKGROUND

Lynae Neal is a U.S. citizen who resides in this District. William Anthony Temple

is employed as an Assistant Special Agent In Charge at the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

On the morning of July 23, 2010, Mr. Temple returned from annual leave to respond to the shooting of a Taylor police officer. He responded in an unmarked government vehicle ("official vehicle"). When he was traveling northbound on Allen Round, he stopped at a red light at the corner of Allen and Eureka Roads and activated his lights and siren. He says he looked around for traffic before going into the intersection.

Ms. Neal traveled east on Eureka Road.  She had a green light at the intersection and was proceeding through it. She heard a siren and stopped her car. She says she looked around, did not see the official vehicle, and continued through the intersection.

The two automobiles collided. Ms. Neal was ticketed for failing to yield to an emergency vehicle and driving with a suspended license. She later pled to impeding traffic.

Ms. Neal filed this claim against the United States ("Government") under the FTCA. She alleges, in relevant part, that: (1) Mr. Temple was negligent; (2) the official vehicle was not an "authorized emergency vehicle" under Michigan law; (3) the official vehicle was not operated during an "emergency" under Michigan law; and (4) the official vehicle was not equipped with an appropriate flashing light.

The Government moves for summary judgment on three independent grounds: (A) Mr. Temple was not negligent; (B) Ms. Neal's proximately caused the collision; and (C) Ms. Neal was more than 50 per cent negligent.

### III.    STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh

3

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

IV.   **ANALYSIS**

    **A. Michigan Law Applies to Ms. Neal's Claim**

    The FTCA provides a limited waiver of sovereign immunity and subjects the United States to liability for certain "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Court has jurisdiction over "civil actions on claims against the United States, for money damages ... for ... loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

    To proceed under the FTCA, Ms. Neal must demonstrate that Mr. Temple was negligent pursuant to Michigan law. *See id.*

    Michigan traffic law applies to U.S. government vehicles. Mich. Comp. Laws Ann. § 257.603 (West). Ordinarily, Michigan traffic laws do not allow a vehicle to travel through a red stop signal. § 257.612(1)(c). But, exigent circumstances allow it.

    By statute, a driver of an emergency vehicle may proceed past a red or stop signal or stop sign when responding to an emergency, but only after slowing down as may be necessary for safe operation. § 257.603(2), (3)(b). This "green light" to bypass a stop sign or red light may be taken advantage of:

> [W]hen the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary . . . and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc unless it is not advisable to equip a police vehicle operating as an authorized emergency vehicle with a flashing, oscillating or rotating light visible in a 360 degree arc. In those cases, a police vehicle shall display a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle.

§ 257.603(4).

When another driver hears a siren and sees an emergency vehicle's lights flashing, the driver must stop and remain in that position until the authorized emergency vehicle has passed. § 257.653; *Hardy v. Nye*, 292259, 2010 WL 3928666 (Mich. Ct. App. Oct. 7, 2010) ("MCL 257.653 requires drivers to pull over upon the approach of an emergency vehicle when the emergency vehicle's lights and siren are activated . . . ."). "Although the driver of another vehicle must yield the right of way to an emergency vehicle emitting an emergency signal, the driver of the emergency vehicle is not relieved from the duty to drive with due regard for the safety of persons using the highway." *W. v. Michigan State Police*, 255787, 2006 WL 1752136 (Mich. Ct. App. June 27, 2006) (internal quotation marks omitted).

### B.  The Government is Entitled to Summary Judgment Because Mr. Temple Was Driving an Emergency Vehicle in an Emergency Situation and Did Not Breach His Duty of Care

In Michigan, "'to make out a prima facie case of negligence, the plaintiff must prove the four elements of duty, breach of that duty, causation, and damages.'" *Rupert v. Daggett*, 695 F.3d 417, 423 (6th Cir. 2012) (quoting *Brown v. Brown*, 478 Mich. 545,

739 N.W.2d 313, 316–17 (2007)).

The Government says Mr. Temple was not negligent because he did not breach his duty of "slowing down as may be necessary for safe operation."  The Government says Mr. Temple stopped before proceeding slowly through the intersection, looked around for traffic, and engaged the official vehicle's warning lights and signal.

Ms. Neal argues that Michigan's emergency vehicle exception does not apply because: (A) the official vehicle was not an "emergency vehicle"; and (B) Mr. Temple was not responding to an emergency. She also argues that even if Mr. Temple was driving an emergency vehicle in an emergency situation, he violated the standard of due care.

The crucial issue is whether Defendant sustains its burden to demonstrate there are no facts in issue concerning: (1) the official vehicle's classification as an emergency vehicle under § 257.603; (2) an emergency situation; and (3) Mr. Temple's adherence to the applicable duty of care.

**1. The official vehicle is an "emergency vehicle" under § 257.603(4)**

Ms. Neal argues that the official vehicle was not an "emergency vehicle" because it lacked a light visible from 360 degrees, and that the lights which it did have could not be seen from 500 feet away, so as to meet the exception under § 257.603(4).

The Government says that the official vehicle is an "emergency vehicle" because it is a police car. In addition, the Government says that the official vehicle lacked a light visible from 360 degrees because it was not advisable to have such a lamp installed, given that it would alert criminals to its presence, but that the official vehicle's lights

6

could be seen from 500 feet away.

There is no question that a police car such as Mr. Temple's can operate as an emergency vehicle. There is no question, too, that his siren was activated. The issue is whether the official vehicle's lights were visible from 500 feet away; all statutory components must be met in order for Mr. Temple to proceed past the red light under § 257.603(3)(b).

The Government submits the affidavit of Jack Auflick to prove the official vehicle was equipped with the type of flashing lights which have a luminous intensity that would make them clearly visible from 500 feet away. Mr. Auflick, a senior consultant with "expertise in human visual-perceptual processes applied to human-machine interfaces for automotive, industrial, and medical device applications, including driver distraction, conspicuity and night time vision, and crash avoidance," represents that flashing lights that meet certain certification standards--such as those on the official vehicle--would be clearly visible at distance 500 feet away.

Ms. Neal's only evidence in support of her assertion that the official vehicle's lights were not visible from 500 feet away is the affidavit of Jonathan Crane, a registered professional engineer "with more than thirty years of experience in traffic engineering." Mr. Crane's affidavit focuses on whether the accident was avoidable based on time and distance, acceleration pattern, and visualization of the automobiles; Mr. Crane's opinion is that Mr. Temple caused the accident. The only relevant statement regarding the visibility of the warning lights is in paragraph five:

> 5. The 1" x 4" single side light mounted behind the darkened Flex side window would not be an effective warning light. There were no emergency lights

7

discernible from 500 [feet] as required by the statutes. Further, the day lighting conditions would limit contrast visibility.

(Doc. 61-1).

Mr. Crane's affidavit does not create a genuine issue of material fact on the visibility of the official vehicle's lights to satisfy § 257.603(4). "'Where an expert presents nothing but conclusions-no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment. Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment." *Williams v. Ford Motor Co.*, 187 F.3d 533, 544 (6th Cir. 1999) (quoting *Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (1st Cir.1993)) (internal quotation marks omitted).

Mr. Crane's statement regarding the visibility of the official vehicle's lights from 500 feet away is conclusory. *See, e.g. id.* "("We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony.") (quoting *Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (1st Cir.1993)).

Accordingly, the Court finds that Mr. Temple's official vehicle was an "emergency vehicle" under § 257.603(4).

### 2. Mr. Temple was Responding to an Emergency at the Time of the Collision

Section 257.603 requires that there be an emergency for the driver of an emergency vehicle to proceed through a red light. *See* § 257.603(2), (3)(b). "The driver of an authorized emergency vehicle when responding to an emergency call, but not while returning from an emergency call, or when pursuing or apprehending a person who has violated or is violating the law or is charged with or suspected of violating the law may exercise the privileges set forth in this section, subject to the conditions of this section." § 257.603(2).

In order for § 257.603 to apply, the Government must show that Mr. Temple reasonably believed an emergency existed. *Fiser v. Ann Arbor*, 417 Mich. 461, 471-472 (1983), overruled on other grounds *City of Detroit v. Robinson*, 462 Mich. 439 (2000). "The existence of an emergency or circumstances warranting the reasonable belief that an emergency exists which will exempt the driver of an authorized vehicle from observing traffic regulation is a question of fact." *May v. City of Detroit*, 233318, 2003 WL 21362985 (Mich. Ct. App. June 12, 2003) (citing *Fiser*, 417 Mich. at 471-72).

Ms. Neal argues that Mr. Temple was not responding to an emergency because two and a half hours had passed after the shooting, and that Mr. Temple was attending the crime scene only to show solidarity with a wounded officer.

However, the Government submits testimony which establishes, inter alia, that: (1) Mr. Temple was told there was a shooting and the shooter was at large; (2) Mr. Temple's supervisor, Thomas Brandon, believed there was an emergency and a public safety situation and wanted Mr. Temple to respond quickly and assist the Taylor Police

9

Department; and (3) a former Detroit Chief of Police reviewed the record and relevant statutory provisions and concluded in a report--cited by Ms. Neal--that Mr. Temple was operating the official vehicle in an emergency situation.

Ms. Neal relies upon evidence which relates to the circumstances necessitating emergency driving, not whether Mr. Temple was responding to an emergency.

First, Ms. Neal says that ATF policy states that special agents will not engage in emergency driving except under very narrow circumstances; she submits an ATF policy communication in support. However, the "narrow circumstances" to which she alludes include the situation to which Mr. Temple was responding: "the threat to serious bodily injury or death of a special agent or other innocent party. . . ." (Doc. 47, Ex. J).

Ms. Neal also wants the Court to rely on the testimony from Mr. Brandon that he did not tell Mr. Temple to respond at a high rate of speed or on an emergency basis, to find conclusively that there was no emergency:

> Q. And did you tell him, sir, that he should respond to the scene in emergency mode using his flashers and siren?
>
> A. No.
>
> Q. Okay. Did you, sir, think that there were exigent circumstances according to the manual that we will get to in just a second that suggested that he should respond to this situation where the officer had already been shot using his flashers and siren?
>
> A. I believed it was an emergency situation with the shooter of an officer who subsequently died that it was a public safety concern, and I wanted Bill to respond expeditiously to the Taylor Police Department to assess the situation and be able to provide any and all resources that we had available to us to assist the Taylor Police Department in apprehending this suspect.

(Doc. 57, Ex. C at page 34, lines 11-25, page 35, lines 1-2).

10

This testimony does not create an issue of fact on whether an exigent circumstance existed. Although "[t]he chase or apprehension of violators of the law does not necessarily constitute an emergency situation" in order to invoke § 257.603, *Scheffler v. Poike*, 170748, 1996 WL 33357024 (Mich. Ct. App. Sept. 27, 1996) (citing *Fiser*, 417 Mich. at 471-72), Mr. Brandon conveyed to Mr. Temple an urgent situation involving a shooting and public safety concern  Mr. Temple reasonably perceived it as such.

A reasonable jury could not find in favor of Ms. Neal on this issue, based on the evidence upon which she relies. *See Anderson*, 477 U.S. at 248.

The Court finds that Mr. Temple was responding to an emergency situation at the time of the collision.

### 3. Mr. Temple Exercised Due Care

In support of its argument that Mr. Temple exercised due care, the Government submits his deposition. Mr. Temple testified that: (A) he activated his sirens; (B) came to a full stop; (C) looked left, looked right, and looked left again; (D) ensured that all traffic had stopped; (E) ensured that he was visible; (F) he then proceeded through the intersection; (G) all traffic came to a full stop; (H) except for Ms. Neal, who kept moving.

Ms. Neal relies upon two expert reports for her argument. Ms. Neal argues that even if the official vehicle was an "emergency vehicle" and Mr. Temple was responding to an emergency situation, Mr. Temple violated the standard of care by operating the official vehicle in a reckless, careless manner. Specifically, Ms. Neal says that Mr. Temple violated his duty of care by relying on his lights and siren to get through the

11

intersection.

She directs the Court to portions of Robert Pachella's report. Mr. Pachella concludes, in relevant part, that: (1) the official vehicle's lights would have been visible to the front and rear of the vehicle but not to the traffic moving perpendicular to it; and (2) that the official vehicle's siren was likely ineffective at warning traffic.

Mr. Pachella's conclusions are unavailing. First, § 257.603(4) does not require that emergency vehicle's lights be seen from the side. *See* § 257.603(4) ("[A] police vehicle shall display a flashing, oscillating, or rotating red or blue light, visible under normal atmospheric conditions from a distance of 500 feet *to the front of the vehicle*." (emphasis added)). Second, Ms. Neal admitted that she heard the official vehicle's siren. (Doc. 42, Ex. D at 62, lines 18-24). Mr. Pachella's conclusions do not raise genuine issues of material fact on Mr. Temple's exercise of due care.

Ms. Neal also directs the Court to Mr. Crane's report. Mr Crane states, in relevant part, that a driver--such as Mr. Temple--entering an intersection while facing a red signal would be expected to look out for cars crossing its path traveling in the green direction. Mr. Crane also testified that Mr. Temple would have been using "some reasonable degree of care" to proceed after looking to the left and seeing that all traffic was stopped. (Doc. 57, Ex. F at 67, lines 17-25).

Mr. Crane's conclusions do not save Ms. Neal's claim because they do not contradict Mr. Temple's assertions regarding his own actions and exercise of due care; Mr. Temple asserts that he looked both ways and saw that traffic had come to a stop, before proceeding.

12

In a negligence case, "[t]he conduct of an officer should be compared to 'that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.'" *Tomcsik v. United States*, 720 F. Supp. 588, 592 (E.D. Mich. 1989) (quoting *McKay v. Hargis*, 351 Mich. 409, 418 (1958)). Mr. Temple exercised due care under § 257.603; he operated the official vehicle during an emergency with due regard for the safety of persons using the highway.

Ms. Neal cannot maintain an action against the Government absent a showing that Mr. Temple was negligent by breaching his duty of care. *See Rupert*, 695 F.3d at 423 (recognizing that a negligence action in Michigan requires that Plaintiff prove duty, breach of that duty, causation, and damages).

## V.    CONCLUSION

The Government met its burden to show the absence of genuine issues of material fact; it is entitled to judgment as a matter of law.

The Court need not consider the Government's additional arguments for summary judgment in its favor.

The Government's motion is **GRANTED.**

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 28, 2013

13

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 28, 2013.

S/Linda Vertriest
Deputy Clerk